UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JAMES P. ENGELS,				No. 7:13-CV-751 (ATB)

        Plaintiff,

   v.

JONATHAN RYAN, and
FRANK DUNNING,

        Defendants.
_____

DAWN J. LANOUETTE, ESQ., for Plaintiff
TIMOTHY P. MULVEY, Ass't Att'y Gen., for Defendant Ryan
M. RANDOLPH BELKIN, ESQ., for Defendant Dunning

ANDREW T. BAXTER, U.S. Magistrate Judge

## **MEMORANDUM-DECISION AND ORDER**

    On September 12, 2014, Senior U.S. District Judge Norman A. Mordue referred this case to me to conduct all proceedings, including the entry of a final judgment, with the consent of all remaining parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 90). On July 22, 2015, this court conducted a bench trial in Syracuse, New York, with respect to plaintiff's surviving civil rights claims against defendants Ryan and Dunning. After the close of the plaintiff's case, and again after all the proof was submitted, the defendants moved for a judgment as a matter of law, asserting, inter alia, that the claims against them were not cognizable under 42 U.S.C. § 1983, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). The court reserved decision on that motion, but now finds that it should be granted, for the reasons stated below. In

the alternative, having evaluated the credibility of the witnesses and weighed all of the evidence admitted at trial, the court would find in favor of defendants Ryan and Dunning on all remaining claims, even if they were cognizable under *Heck v. Humphrey*. Pursuant to Fed. R. Civ. P. 52, the court sets forth findings of fact and conclusions of law supporting my alternative finding on the merits.

I.    **Summary of Undisputed Facts and Procedural History**

Following up on an anonymous complaint to the New York Department of Environmental Conservation ("DEC"), Environmental Conservation Officer Jonathan Ryan and Environmental Engineer Jennifer Lauzon performed an inspection of a junk yard on plaintiff's property on Hanson Road in Parishville, New York on August 8, 2007. (Def. Ex. 1). As a result of that inspection, defendant Ryan charged plaintiff, in Town of Parishville Justice Court with, inter alia, a violation of 6 N.Y.C.R.R. § 360-13.1(b), which provides that "No person shall engage in storing 1,000 or more waste tires at a time without first having obtained a permit to do so. . . ." (Def. Exs. 2, 9). Parishville Town Justice Frank Dunning, who owned property in close proximity to plaintiff's junk yard, disqualified himself, and the criminal case was transferred to Town of Potsdam Justice Court ("Potsdam Town Court"). (Def. Ex. 4). On July 29, 2009, plaintiff pled guilty to the violation of 6 N.Y.C.R.R. § 360-13.1(b) in the Potsdam Town Court and, pursuant to a plea agreement, was sentenced to a conditional discharge. One of the conditions of the disposition was that plaintiff would, within 90 days, clean up his property so that it was "100% in compliance with all State laws, provable exclusively by Certified Statement from the Department of Environmental

2

Conservation [("DEC")]."  (Def. Exs. 5, 9).

On November 6, 2009, defendant Ryan submitted an unsworn memorandum to the Potsdam Town Court and the District Attorney reporting that Officer Ryan and Ms. Lauzon had inspected plaintiff's property on November 3rd, and determined that "[t]his property has not been cleaned to the satisfaction of the DEC.  The majority of the tires have not been removed."  (Def. Ex. 8).  Officer Ryan's memorandum was supported by a number of undated photographs purporting to show a large quantity of waste tires on plaintiff's property as of November 3, 2009.  (Def. Ex. 13).  Upon an application from the District Attorney, plaintiff's conditional discharge was revoked by the Potsdam Town Court, and plaintiff was re-sentenced, on March 11, 2010, to a fine of $1,278,000.  (Def. Exs. 7, 14).  Plaintiff appealed, and after extensive litigation, on August 24, 2012, a St. Lawrence County Judge vacated the revocation of plaintiff's conditional discharge on procedural grounds, and remitted the case for further proceedings.  (Def. Ex. 10).

On June 26, 2013, plaintiff filed a *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, alleging that six defendants violated his federal constitutional rights in connection with the revocation of his conditional discharge.  (Dkt. No. 1).  By Memorandum-Decision and Order dated August 26, 2013, Judge Mordue dismissed the claims against three defendants, *sua sponte*, on the grounds of judicial and qualified immunity.  However, Judge Mordue allowed the case to go forward against the Town of Potsdam, DEC Officer Jonathan Ryan, and Frank Dunning, the Town of Parishville Justice, who was found not to be acting in his judicial capacity, in

connection with the conduct alleged in the complaint. (Dkt. No. 17 at 3).

In response to defense motions to dismiss, pursuant Fed. R. Civ. P. 12(b)(6), Judge Mordue dismissed the claims against the Town of Potsdam on July 25, 2014. (Dkt. No. 81 at 7). However, Judge Mordue denied defendant Ryan's motion to dismiss and concluded that plaintiff had stated plausible federal constitutional claims against defendants Ryan and Dunning. Judge Mordue held that, liberally construed, plaintiff's complaint alleged "that Ryan, acting under color of state law, knowingly submitted a false report to Potsdam Town Court stating that plaintiff was not in compliance; that Ryan did so because he was improperly influenced by Town of Parishville Justice Frank Dunning, who had stated that he 'wants all the tires out of here'; and that due to Ryan's false report, plaintiff's sentence of conditional discharge was revoked. As a result, plaintiff was required to make 22 court appearances, threatened with jail time, and sentenced to a fine in excess of $1 million." (Dkt. No. 81 at 5, 6). Judge Mordue concluded that such "[c]laims of harm stemming from the fabrication of evidence by a governmental official have been recognized under the procedural due process guarantee of the Fifth and Fourteenth Amendments . . . and the fair trial guarantee of the Sixth and Fourteenth Amendments" (*Id*. at 5).[1]

---

[1] "The Second Circuit has held that '[i]t is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.' . . . While cases in this Circuit are inconsistent as to whether this claim arises under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments, the Second Circuit . . . makes clear that a § 1983 claim for damages based on fabrication of evidence lies where an officer's post-arrest fabrication of evidence results in a restraint on the plaintiff's liberty." *Morse v. Spitzer*, No. 07-CV-4793, 2013 WL 359326, at *3-4 (E.D.N.Y. Jan. 29, 2013), adhered to on reconsideration, 2012 WL 3202963 (E.D.N.Y. Aug. 3, 2012) (citations omitted).

4

On September 12, 2014, plaintiff finally resolved the remanded criminal case against him in the Potsdam Village Court (to which the case had been transferred), by admitting that he violated his conditional discharge and agreeing to pay a fine of $100. (Def. Ex. 11). During that proceeding, the Village Justice asked plaintiff whether "on November 6, 2009, you had at that time exceeded a 90-day time frame to clear tires off your property. . . . And at that time, November 6, 2009, you had over 1,000 tires on your property located at 134 Hanson Road in Potsdam." Plaintiff, although not under oath, responded "Yes, sir." (Def. Ex. 12; Trial Transcript ("T.") at 65, Dkt. No. 120).

On November 4, 2014, defendant Ryan filed a summary judgment motion with respect to the remaining claim against him. (Dkt. No. 94). This court denied the motion because defense counsel failed to properly support critical proffered facts with sworn affidavits and admissible evidence. (Dkt. No. 110).

## II. <u>The Defendants' Motion Under Heck v. Humprey</u>

### A. **Applicable Law**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id*. at 486-87. "But if . . . plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Id*. at 487. "Not every § 1983 claim that arises out of a

5

criminal case requires that the underlying criminal process reach a favorable termination. . . . A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (citations omitted).

**B.    Analysis**

As noted above, defendant Ryan advised the Potsdam Town Court and the District Attorney that, as of November 3, 2009, plaintiff had not satisfied the primary requirement of his conditional discharge because he failed to remove a sufficient number of waste tires from his property. The District Attorney thereafter moved to vacate plaintiff's conditional discharge; and, on March 11, 2010, the Potsdam Town Justice granted that motion and imposed a fine of $1,278,000 on plaintiff. (Def. Exs. 7, 14). County Court Judge Jerome J. Richards ultimately reversed this revocation of plaintiff conditional discharge and the fine imposed, and remanded the case for a proper revocation hearing, inter alia, because the Potsdam Town Court acted without a sworn statement or sworn testimony from Office Ryan. (Def. Ex. 10 at pp. 7-8).

Plaintiff's surviving civil rights claims are predicated on the allegation that defendant Ryan misrepresented the condition of plaintiff's property in his November 2009 report to the Potsdam, Town Court and the District Attorney.[2] Defendants assert

---

[2] As plaintiff's counsel conceded during the final pretrial conference, plaintiff's claims against defendants Ryan and Dunning do **not** arise from the procedural deficiencies in the first revocation hearing in 2010. Any claims based on the procedural deficiencies could only be made against the Potsdam Town Justice and/or the District Attorney, both of whom were dismissed from this action based on absolute judicial and prosecutorial immunity. (See Dkt. No.

6

that plaintiff's claims are not cognizable under *Heck v. Humphrey* because plaintiff's success on his civil rights claims could not be reconciled with his admissions, in Potsdam Village Court in September 2014, that he violated his conditional discharge by having more than 1,000 tires on his property at the time of the DEC re-inspection.

Plaintiff argues that he is seeking damages arising from the March 2010 revocation of plaintiff's conditional discharge, which was subsequently vacated, and that plaintiff's September 2014 admission that he violated his conditional discharge should not bar his civil rights claims. Plaintiff's counsel relies on the Second Circuit's 2014 en banc decision in *Poventud* in opposing the defendants' motion to dismiss plaintiff's surviving claims pursuant to *Heck v. Humphrey*. (*See* Pl.'s Trial Mem. at 4-5, Dkt. No. 118).

Poventud's conviction, after trial, on attempted murder and related charges was vacated as a result of a collateral attack in state court. The state court found that the investigating officers failed to disclose exculpatory evidence that the key government witness and victim had mistakenly identified Poventud's brother as one of his assailants before the witness eventually identified Poventud. *Poventud*, 750 F.3d at 125-26. The case was remanded for a new trial; but, in order to secure his immediate release from prison, Poventud pled guilty to a reduced charge of attempted robbery, contradicting his prior alibi defense that he was not present during the alleged attack on the victim. *Id.* at 124, 126-27.

Poventud thereafter initiated a section 1983 action for damages against the

17 at 3).

7

officials who conducted the original criminal investigation, based on the *Brady*[3] violations that tainted the first trial. The Second Circuit, reversing the district court dismissal of Poventud's civil rights action, found that Poventud's later plea to reduced charges did not warrant a *Heck v. Humphrey* bar of plaintiff's section 1983 action. Stressing that a viable *Brady* claim does not require proof of factual innocence, the Second Circuit concluded that Poventud's subsequent plea to a related, less serious offense was not inconsistent or irreconcilable with his 1983 claim predicated on the *Brady* violation in the first trial. *Id.* at 134-35, 137-38.[4]

Poventud's *Brady* claim did not require him to prove his innocence on all criminal charges related to the alleged incident, so Poventud's subsequent admission that he attempted to rob the victim was not necessarily irreconcilable with his 1983 action. *Id.* at 134-35. However, *Poventud* is distinguishable and does not save the instant civil rights action from dismissal under *Heck v. Humphrey*. Plaintiff's claims in this case are predicated on the allegation that defendant Ryan misrepresented that plaintiff violated his conditional discharge, in essence, by still having more than 1,000 waste tires on his property as of November 3, 2009. Those section 1983 claims cannot be reconciled with plaintiff's admission in Potsdam Village Court, on September 12, 2014, that he did violate his conditional discharge by having more than 1,000 waste

---

[3] A *Brady* violation occurs when exculpatory or impeachment evidence favorable to an accused is suppressed by the prosecution, resulting in prejudice. *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The Second Circuit acknowledged that Poventud's civil rights claim based on the *Brady* violation was inconsistent with his conviction after the first trial; but that conviction was vacated, eliminating any *Heck v. Humphrey* problem relating to the first trial. *Id.* at 134-35, 138.

8

tires on his property on November 3, 2009. Because plaintiff's success on his civil rights claim in this case would necessarily invalidate the revocation of his conditional discharge in September 2014, which disposition has not been reversed or expunged, those claims are not cognizable under *Heck v. Humphrey*.

## III. <u>Findings Regarding Key Disputed Facts</u>

### A. **Plaintiff's Version of Disputed Facts**

Plaintiff testified that, after he was first charged with having more than 1,000 waste tires on his property in 2007, he began an arduous process of separating the tires from their metal rims, which plaintiff sold for scrap, and taking the tires, in small batches, to the Massena Transfer Station for proper disposal. (T. 15-16). Plaintiff proffered nine mostly illegible copies of receipts for the cost of disposing of loads of tires at the county dump prior to November 2009 (Def. Ex. 16), although he acknowledged that each load probably consisted of only about 25 tires (T. 52, 72-73). Plaintiff also claimed that, before November 2009, he removed two tractor trailer loads of tires from his property, which were delivered to a commercial tire shredder for disposal; but plaintiff offered no documentation of that claim. (T. 16, 73-74).

Perhaps because of confusion about dates, plaintiff gave inconsistent testimony about how many tires remained on his property in November 2009, when defendant Ryan reported to the Potsdam Town Court that most of the waste tires on plaintiff's property had not been removed. (T. 24-25, 26-27). However, plaintiff's position at trial seemed to be that, although estimating the volume of remaining tires was speculative, he thought there were less than 1,000 tires on the property at the time it

9

was re-inspected by the DEC in November 2009. (T. 26-27, 46-47, 50-51, 56). During the trial, plaintiff acknowledged his relatively recent admission in the Potsdam Village Court that there were more than 1,000 tires on his property at the time of the DEC re-inspection. But he testified that, after years of fighting the criminal charges against him, he would have done anything to resolve the case on the favorable terms offered by the District Attorney in September 2014. (T. 64-65).

Plaintiff did not seem to question defendant Ryan's good faith in carrying out his duties as a DEC Officer. (T. 60-62, 71-72). However, plaintiff testified that he believed the DEC Officer was pressured by defendant Dunning to inaccurately report that plaintiff was in violation of DEC regulations and the terms of his conditional discharge because of the volume of tires remaining on his property in November 2009. (T. 60-62). The only evidence that plaintiff offered to support his claim that defendants Dunning and Ryan conspired to provide false information to the Potsdam Town Court was Officer Ryan's alleged statement to plaintiff that "the Judge" wanted all of the tires off of plaintiff's property. Plaintiff testified that he asked Officer Ryan whether he was referring to defendant Dunning as "the Judge," and plaintiff claimed that Officer Ryan did not respond. (T. 22-23, 26, 57). Plaintiff also claimed that defendant Dunning had long wanted plaintiff's dump shut down and "stalked" plaintiff by frequently driving by his property. (T. 4, 6, 40, 42, 60).

**B.  Defendants' Version of Disputed Facts**

Officer Ryan testified that, when he inspected plaintiff's property in August 2007 and November 2009, he asked DEC Environmental Engineer Jennifer Lauzon to

assist him because, inter alia, she had expertise in estimating the volume of solid waste. (T. 91, 92-93, 96, 103, 105). In August 2007, Ms. Lauzon did a rough, conservative estimate of the volume of one of the piles of tires on plaintiff's property and concluded that there were well over 1,000 waste tires. (T. 120-22). Ms. Lauzon thereafter exchanged correspondence with plaintiff regarding the tire piles on his property. She testified that, on January 2, 2008, plaintiff advised that he had been unable to remove any tires over the winter, but promised to remove 500 within 90 days. (T. 125-26). In or about July 2008, Ms. Lauzon re-inspected plaintiff's property and took measurements of the various tire piles to generate a more comprehensive estimate of the volume. She estimated that, at that time that plaintiff had approximately 10,000 waste tires on his property. (T. 122-23, 123-24, 131-32).

When Officer Ryan and Ms. Lauzon re-inspected plaintiff's property in November 2009, at the request of the Potsdam Town Court, Ms. Lauzon brought pictures she had previously taken of the tire piles. Comparing the size of the piles in November 2009 with the size of the piles in the earlier pictures, Ms. Lauzon concluded that plaintiff had failed to significantly reduce the number of waste tires on his property. (T. 123-24, 125). Although she did not re-measure the piles, Ms. Lauzon testified that there were clearly more than 1,000 tires just in one of the bigger piles on the property in November 2009. (T. 127-28). Ms. Lauzon took additional digital photographs to document the large volume of waste tires still on the property. (T.

127).[5] She communicated her conclusion about the volume of the tires on the property to Officer Ryan. (T. 110-11, 130).

In his memorandum to the Potsdam Town Court, Officer Ryan did not provide a specific estimate of the number of tires remaining on the property in November 2009. (Def. Ex. 8). His understanding at the time was that plaintiff's property "was supposed to be cleaned of tires." (T. 108). But, Officer Ryan reported to the Court and the District Attorney that "the majority of the tires have not been removed" from plaintiff's property. (Def. Ex. 8).

Ms. Lauzon continued to monitor plaintiff's progress in removing the tires from his junk yard. She testified that plaintiff did not remove enough tires to bring the property into compliance with DEC regulations until September 2011. (T. 128-29).

Officer Ryan returned the tickets against plaintiff to Parishville Justice Dunning in August 2007, but did not recall having any further communications with defendant Dunning about plaintiff thereafter. (T. 97-98). Ms. Lauzon had no recollection of meeting Mr. Dunning prior to coming to court to testify. (T. 128-29, 133).[6]

Defendant Dunning denied any involvement with the anonymous complaint to the DEC in 2007 about plaintiff's junkyard. (T. 82; Def. Ex. 1). Justice Dunning testified that he recused himself from plaintiff's case shortly after the tickets were returned to him, and he recalled having no subsequent discussions with Officer Ryan,

---

[5] Officer Ryan testified that he thought he took the photographs of plaintiff's property in November 2009. (T. 99).

[6] Defendant Dunning recalled that when Officer Ryan returned the violation notices in August 2007, Ms. Lauzon was present and that Justice Dunning may have had a conversation with her. (T. 83-84).

12

or anyone else from the DEC, about plaintiff or his property. (T. 82-84). Defendant Dunning explicitly denied telling Officer Ryan to make plaintiff get all of the tires off his property. (T. 87). Justice Dunning stated that he had no involvement in the criminal case against plaintiff going forward, and had no communications about the case with the neighboring local justice who handled it. (T. 87-88).

Defendant Dunning never complained formally about plaintiff's junk yard, although he stated that he could have commented on it during the 1990s when he served on the Parishville Site Review Board, which reviewed junk yards in the Township. (T. 80). Justice Dunning testified that he had no involvement in prior litigation by which the Town of Parishville tried to close plaintiff's junk yard. (T. 80-81). While defendant Dunning drove by plaintiff's property several times per week in connection with farming or logging the land that defendant Dunning owned nearby, he denied ever "stalking" the plaintiff or trying to upset him. (T. 88).

### C. Findings of Fact

After evaluating the credibility of the witnesses who testified before me, this court concludes that plaintiff did not establish, by a preponderance of the evidence, that Office Ryan made any misrepresentation about plaintiff's property to the Potsdam Town Court in November 2009. Officer Ryan's statement that plaintiff had not removed the majority of the waste tires from his property was a reasonable and accurate conclusion based on the information he received from DEC Environmental Engineer Jennifer Lauzon. Based on her expertise and experience in estimating the volume of solid waste, her prior measurements of the various tire piles on plaintiff's

13

property, and her comparison of the size of the tire piles in November 2009 with prior photographs of the piles, I found Ms. Lauzon's conclusions about the volume of tires on plaintiff's property was highly credible. Even if Officer Ryan's memorandum was interpreted as implying that there were more than 1,000 tires on plaintiff's property as of November 2009, the evidence amply supports that more specific estimate.

Plaintiff's trial testimony that he reduced the number of tires on his property below 1,000 by November 2009 was not credible, particularly because it contradicted his explicit admission, in September 2014, that he violated his conditional discharge by still having more than 1,000 waste tires on the property at the time of the DEC re-inspection. Plaintiff testified that he was not equipped to estimate the volume of tires on his property, and that he essentially relied upon Ms. Lauzon's estimates to conclude that he had at least 5,000 tires on the property originally. (T. 25, 44-45, 47, 55). Based on the other evidence, including the testimony of Ms. Lauzon, I conclude that plaintiff's claim about the number of tires he removed from the property before November 2009 was substantially exaggerated.[7] Even crediting plaintiff's largely uncorroborated testimony about his efforts to dispose of tires, he would not have removed enough tires from the property by November 2009, to get anywhere near the

---

[7] Plaintiff claimed that he started removing tires from the property shortly after the first inspection in August 2007; but Ms. Lauzon testified that plaintiff admitted to her that he was not able to remove any tires as of January 2008. (T. 15-16, 125-26). Ms. Lauzon also testified that plaintiff did not remove enough tires to bring his property into compliance until September 2011. (T. 128-29). To be charitable to plaintiff, and in light of his apparent difficulty associating facts with a particular time period, he may have inaccurately attributed his efforts to remove tires from the property after November 2009 to the time period before the DEC re-inspection.

14

1,000 tire limit by the time of the DEC re-inspection.[8] The photographs of the property from November 2009, which Ms. Lauzon credibly authenticated, strongly contradict plaintiff's claim that there were less than 1,000 tires on his property.

The court also concludes that plaintiff did not sustain his burden of proving that defendant Dunning colluded or conspired with defendant Ryan to provide false evidence to the Potsdam Town Court about plaintiff's junk yard. The fact that Justice Dunning promptly recused himself from plaintiff's criminal case undermines plaintiff's theory that defendant Dunning would conspire to unduly influence the subsequent court proceedings. As noted, the only evidence that plaintiff could muster to support his claim that defendant Dunning tried to manipulate Officer Ryan in reporting ongoing DEC violations on plaintiff's property was defendant Ryan's allegedly coy statement that "the Judge" wants all of the tires off plaintiff's property. Officer Ryan's testimony suggested that he thought the conditions set by the Potsdam Town Justice required plaintiff to remove all of the tires from his property. (T. 108). The obvious innocent explanation of the alleged statement, that Officer Ryan was talking about what the presiding Potsdam Town "Judge" wanted, is much more credible than plaintiff's strained interpretation that recused Parishville Justice Dunning

---

[8] Plaintiff claimed, without supporting evidence, that he took two tractor trailer loads of tires from his property to a shredder before November 2009. (T.16, 73-74). Ms. Lauzon estimated that a trailer would hold approximately 1,000 tires. (T. 122). Otherwise, plaintiff removed tires in small loads of approximately 25 tires to the county dump, and he provided illegible documentation of only nine such loads. (Def. Ex. 16; T. 52, 72-73). Generously construed, plaintiff's testimony would suggest that he removed no more than 3,000 tires from the property by November 2009. Whether one accepted Ms. Lauzon's estimate that plaintiff originally had 10,000 tires on the property or plaintiff's unsupported claim that there could have been as few as 5,000 tires (T. 44-45), plaintiff did not sustain his burden of proving he reduced the volume of tires below 1,000 by the time of the DEC re-inspection.

15

was influencing the criminal case against plaintiff.

I credit the testimony of defendant Ryan and Ms. Lauzon that they had no conversations with Justice Dunning after returning the original violation notices to him in August 2007. And, while it is not hard to imagine that defendant Dunning was not thrilled to own property near an ill-kept junk yard, I found his testimony much more credible than plaintiff's "paranoid" claims that Justice Dunning was stalking plaintiff and repeatedly exploiting his influence as a town official to interfere with plaintiff's lawful use of his property. (*See* T. 42).

## IV. **Conclusions of Law**

As discussed above, the critical basis for plaintiff's surviving claim against defendant Ryan is that he misrepresented that plaintiff's property was not in compliance with DEC regulations in the officer's November 2009 report to the Potsdam Town Court and the District Attorney.[9] This court's finding of fact that plaintiff has not sustained his burden to prove, by a preponderance of the evidence, that Officer Ryan misrepresented any information about plaintiff's property, would compel the entry of judgment in favor of defendant Ryan on the merits with respect to

---

[9] *See Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (recognizing a due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity"); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."). *See also Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) ("A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.").

16

plaintiff's surviving claim, even if it was cognizable under *Heck v. Humphrey*.

The only reason that defendant Dunning would not be dismissed from this action based on absolute judicial immunity was because Justice Dunning recused himself from plaintiff's criminal case, and was not acting in his judicial capacity in connection with the conduct alleged by plaintiff in his complaint. (See Dkt. No. 17 at 3). Because defendant Dunning was not acting in his capacity as a Town Justice,[10] he could be liable under section 1983 only if he conspired with a state actor–in this case DEC Officer Ryan–to violate plaintiff's civil rights.[11] Given this court's finding that defendant Ryan did nothing to violate plaintiff's rights to due process or a fair trial, defendant Dunning could not be liable for conspiring with Officer Ryan to do so.[12] In

---

[10] To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (citing, inter alia, *West v. Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant act under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is beyond the reach of section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citations omitted).

[11] A private actor may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was "'a willful participant in joint activity with the State or its agents.'" *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "This potential liability also applies to a private party who 'conspires with a state official to violate the plaintiff's constitutional rights . . .'" *Young v. Suffolk County*, 705 F. Supp. 2d 183, 195 (E.D.N.Y. 2010) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005)).

[12] "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Plaintiff proved no overt act by

any event, the court has also found that the plaintiff did not sustain his burden to prove any collusion or conspiracy between the defendants with respect to the criminal proceedings against plaintiff. Accordingly, a judgment in favor of defendant Dunning on the merits would also be appropriate, even if plaintiff's surviving claim was cognizable under *Heck v. Humphrey*.

**WHEREFORE**, for the reasons discussed above, the court finds in favor of defendants Ryan and Dunning on the surviving claims brought against them. Accordingly, it is hereby

**ORDERED**, that the complaint is dismissed with prejudice and the Clerk of the Court is directed to enter judgment in favor of the defendants on all claims.

Dated: August 19, 2015

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

defendant Ryan in furtherance of an agreement to violate plaintiff's constitutional rights, nor did plaintiff credibly allege any overt act by defendant Dunning.